UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| DANNY NEWTON, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Civil No. 3:18-cv-1244 (MPS) |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY | : | |
| Defendant. | : | |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

In this appeal from the Social Security Commissioner's denial of benefits, Danny Newton argues that the Administrative Law Judge (ALJ) erred because she (1) failed to properly formulate his residual functional capacity (RFC); (2) failed to properly evaluate his claim under the Medical-Vocational Guidelines; and (3) failed to properly evaluate the jobs available to him. I agree with Mr. Newton's first argument. On remand, the ALJ must develop the record and reevaluate Mr. Newton's RFC in light of the new record. I do not reach Mr. Newton's remaining claims.

I assume the parties' familiarity with Mr. Newton's medical history (summarized in a stipulation of facts filed by the parties, ECF No. 16-2, which I adopt and incorporate herein by reference), the ALJ opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

**I.      Standard of Review**

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). As such, the Commissioner's decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

**II.     Discussion**

**A. The ALJ's RFC Determination Was Not Supported by Substantial Evidence**

Mr. Newton argues that the ALJ failed to properly formulate his RFC. ECF No. 16-1 at 2. More specifically, he argues that the ALJ had an affirmative duty to obtain a medical source

statement from a treating physician because the medical opinions in the record did not meaningfully address his functional limitations. *Id*. at 10-11.[1] I agree.

> i. *The ALJ Made an RFC Determination in the Absence of Supporting Expert Medical Opinion*

The RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). It is well established that "an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Staggers v. Colvin*, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (internal quotation marks and citations omitted). "The social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (internal quotation marks and alterations omitted). Thus, where the record does not contain relevant medical opinion evidence, an ALJ has an "affirmative duty to request RFC assessments from a plaintiff's treating sources." *Felder v. Astrue*, 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012); *see also Marshall v. Colvin*, 2013 WL 5878112, at *9 (W.D.N.Y. Oct. 30, 2013) (finding that a record with "extensive medical documentation" was insufficient because "it lacked any statement from Plaintiff's treating physicians . . . regarding her functional abilities"); *Aceto v. Commr. of Soc. Sec.*, 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) ("Since the ALJ had nothing more than treatment

---

[1] Mr. Newton makes a number of additional arguments challenging the RFC determination. He argues that (1) the ALJ relied too heavily on the opinions of the state agency physicians; (2) the ALJ mistakenly classified Mr. Newton's exertional capacity as "light" even though her description of his capacity suggests it should be classified as "sedentary;" and (3) the medical record supports a limitation to sedentary exertion. ECF No. 16-1 at 8-11. I do not reach these arguments as I find that the ALJ had a duty to further develop the record and that the RFC was not otherwise supported by substantial evidence.

records and consultative reports to review, he had an affirmative duty to develop the record and request that Plaintiff's treating physicians assess her RFC.").

An ALJ's failure to request RFC assessments may be harmless, and thus no remand warranted, in cases where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Commr. Soc. Sec.*, 521 Fed. App'x 29, 34 (2d Cir. 2013). For example, remand is not warranted when "the ALJ ha[s] [a] number of functional assessments from consultative examiners and some form of functional assessment from a treating source" even if there is no formal RFC assessment in the record. *Staggers*, 2015 WL 4751123, at *3. Similarly, remand may not be necessary where the ALJ rejects the medical opinion evidence in the record, but the RFC formulation is supported by substantial evidence of functional capacity in "contemporaneous treatment notes." *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 8–9 (2d Cir. 2017). So, while "it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician, a decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity." *Downes v. Colvin*, 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) (internal quotation marks and citation omitted). In short, "courts have upheld an ALJ's RFC finding only where the record is clear and, typically, where there is *some* useful assessment of the claimant's limitations from a medical source." *Staggers*, 2015 WL 4751123, at *3. This is not such a case.

Here, the ALJ determined that Mr. Newton "has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except he can perform occasional climbing of ramps or stairs with occasional balancing, stooping, kneeling, crouching, or crawling, but no ability to do work that involves climbing ladders, ropes, or scaffolds." R. 14.

She also determined that Mr. Newton "should avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, or hazards such as machinery or heights" and that he "is limited to standing and or walking no more than two hours cumulative during the course of a workday in addition to normal breaks." R. 14.

This RFC determination is not supported by any functional assessments from treating physicians. Although the ALJ considered statements from treating physician Seth Blattman that Mr. Newton's symptoms impeded his ability to work, R. 17, she determined that they were "not entitled to any special significant weight" because "they are vague and discuss no functional limitations," and because they concern issues that "are reserved to the Commissioner," R. 17-18. While the ALJ is not required to accord weight to opinions on issues reserved to the Commissioner, Dr. Blattman's statements suggest a need to inquire further to understand *why* a treating physician believed that Mr. Newton's ability to work was impeded—at least where there was no function-by-function analysis from a treating physician and, as discussed below, no information whatsoever from any medical source for nearly half of the relevant time period.

The only functional assessments the ALJ cites are part of the disability determination explanations and are authored by non-examining physicians. R. 17 (citing to Exhibits 2A and 4A). Moreover, these assessments were completed in December 2014 and March 2015, R. 108-09, 120, even though Mr. Newton may establish disability at any time on or before June 13, 2017, ECF No. 17-1 at 2; R. 11. Thus, the state agency assessments provide no information about Mr. Newton's functional capacity for *more than two years* of the relevant time period, which is from Mr. Newton's alleged date of disability date, June 1, 2014, through the date of the Commissioner's final decision, June 13, 2017. R. 10, 20. The ALJ recognized this deficiency and assigned "[l]ess weight" to their findings that Mr. Newton could stand or walk up to six hours,

5

explaining that the state agency assessments "were based on information contained in the record at the time that the assessments were made, and no medical records generated or provided after that date were considered by these doctors." R. 17. The ALJ does not explain why the same concern does not warrant the assignment of "less weight" to other findings—like the finding that Mr. Newton could occasionally lift and/or carry 20 pounds, R. 105, 117—in the state agency assessments. Thus, the ALJ's finding that Mr. Newton is "limited to standing and or walking no more than two hours cumulative during the course of a workday in addition to normal breaks" is unsupported by any functional assessments, and although the ALJ's finding that Mr. Newton could "perform light work" is supported by state agency assessments, those assessments do not include any information about Mr. Newton's functional limitations during the most recent two years of the relevant time period.

The absence of a function-by-function analysis for such a significant amount of time is particularly problematic in light of Mr. Newton's testimony on September 19, 2016 that some of his symptoms have worsened over the years:

> Q. So how long can you stand before you need to sit down?
> A. Probably about 15 -- about 15, no more than 20 minutes.
> Q. Were you able to stand for longer periods of time back in July, of 2014?
> A. Yes.
> Q. How much longer could you stand at that time?
> A. At that time, I probably used to stand, like, no more than probably about a hour --
> Q. Okay.
> A. -- before I have to go sit down.
> Q. Now, I wonder -- your ability to stand, was there any specific cause of the worsening or was it just something that happened progressively?
> A. I think it's something that happened progressively.
> Q. So slowly you were able to stand for shorter periods since July 2014?
> A. Yeah. And then it just progress -- it just started getting -- getting more and more pain.

R. 79-80. This testimony suggests that Mr. Newton's functional limitations grew worse between July 2014 and September 2016 and supports the need to inquire further about the nature of his

6

functional limitations during the later years of his eligibility for disability benefits. Although the ALJ noted that Mr. Newton "stated that his condition has progressively worsened since his alleged onset date," R. 15, she did not take any steps to obtain an evaluation of his functional limitations for the latter portion of the relevant time period.

Because there were no functional assessments from a treating physician, and because the only assessments in the record were from non-examining physicians that were partially rejected by the ALJ and that failed to include any assessment of Mr. Newton's limitations for two years of the relevant time period, the ALJ had a duty to develop the record and obtain relevant medical opinions before making the RFC assessment.

>   ii. *The ALJ's RFC Formulation Was Not Otherwise Supported by Substantial Evidence*

The Commissioner argues that the ALJ was under no obligation to obtain additional medical opinions "since the evidence of record contained sufficient information upon which the ALJ could formulate an RFC." ECF No. 17-1. The Second Circuit has upheld an ALJ's RFC determination where "there was no competent medical opinion that supported" the ALJ's conclusions, but "the record contain[ed] sufficient evidence from which [the] ALJ [could] assess the claimant's residual functional capacity." *Monroe*, 676 Fed. App'x at 8 (alterations omitted); *see also Tankisi*, 521 Fed. Appx. at 34 (explaining that "it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity" because even though there were no "formal opinions on [the claimant's] RFC from her treating physicians, [the record] does include an assessment of [the claimant's] limitations from a treating physician").

For instance, in *Monroe*, the ALJ declined to give controlling weight to the assessment of a treating physician, but the Second Circuit nonetheless determined that her RFC was supported

7

by substantial evidence because it relied on the treating physician's extensive and contemporaneous treatment notes. These notes included "descriptions of [the claimant's] symptoms," "contemporaneous medical assessments of [the claimant's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity," and information "relating to [the claimant's] social activities relevant to her functional capacity—such as snowmobile trips, horseback riding, and going on multiple cruise vacations." *Monroe*, 676 Fed. Appx. at 8. Based on the treating physician's treatment notes, the ALJ determined that the claimant had the capacity to "perform a full range of work at all exertional levels." *Id.* at 6. The court concluded that although the ALJ ultimately rejected the treating physician's "*post hoc* medical opinion*,*" the physician's treatment notes provided substantial evidence in support of the ALJ's conclusion.

Unlike in *Monroe*, the evidence the ALJ cites in this case to support her RFC determination does not support her specific findings. First, the ALJ found that Mr. Newton "is limited to standing and or walking no more than two hours cumulative during the course of a workday." R. 14. She cites treatment notes stating that he "was able to walk a block without stopping," R. 15, and "was noted to have a normal gait with sensation to light touch," R. 16, and that "there is no evidence that the cane was prescribed or used," R. 16. But these observations are insufficient to support her specific finding that Mr. Newton can stand or walk for up to two hours during the day. Second, the ALJ determined that Mr. Newton could perform light work, R. 14, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567(b). Although the state agency assessments support this finding, R. 105, 117, they were completed years before the end of the relevant time period and contradict Mr. Newton's 2016 testimony that he could lift less than 10

8

pounds, R. 83. Finally, the ALJ determined that Mr. Newton's "ability to perform [specified] daily activities is contrary to the allegation of a greater level of ongoing functional limitations than are described in this finding." R. 17. In particular, she cites Mr. Newton's statements that he performs self-care, tries to help out with his grandson when his daughter works, drives his grandson to work a few times a week, prepares light meals, sweeps, and goes for short walks. *Id*. Mr. Newton also explained, however, that he is unable to go grocery shopping on his own because his feet bother him, R. 79, that he limits his driving time to 30 minutes, R. 80, that his wife must sometimes help him walk to the bathroom at night, R. 233, and that he can walk only a very short distance before he needs to stop and rest, R. 238. Overall, Mr. Newton's limited ability to complete some daily activities—some only with assistance—does not constitute substantial evidence that his functional abilities are in excess of those alleged, and in any event do not support specific findings that he can stand or walk for two hours per work day and lift up to 20 pounds.

More fundamentally, the ALJ's RFC determination is not supported by substantial evidence because none of the records the ALJ relied on include information about Mr. Newton's medical conditions or functional abilities after January 2016. The ALJ cited Exhibits 2F, 7F, and 8F to support her RFC determination, explaining that she "relies on the treatment notes showing largely routine visits for medical conditions and the claimant's activities . . . to support the decisional residual functional capacity." R. 18. But these exhibits do not include any information about Mr. Newton's conditions and limitations after June 2015. R. 298-371 (Exhibit 2F) (medical records from PriMed Physicians for 2014); R. 434-636 (Exhibit 7F) (medical records from Yale New Haven Health for November 2014 to February 2015); R. 637-706 (Exhibit 8F) (medical records from PriMed Internal Medicine for March 2015 to June 2015). The ALJ also

9

cited portions of other medical records to support her determination; again, none of these records address Mr. Newton's condition or limitations during the latter portion of the relevant time period. R. 372-390 (Exhibit 3F) (medical records from Connecticut Vascular & Thoracic Surgical Associates for 2014); R. 403-406 (Exhibit 5F) (medical records from Connecticut Vascular & Thoracic Surgical Associates for January 2015); R. 407-433 (Exhibit 6F) (medical records from Connecticut Vascular & Thoracic Surgical Associates for 2014 and January 2015); R. 707-721 (Exhibit 9F) (medical records from Connecticut Vascular-Thoracic for April 2015 to January 2016).

### B. Reevaluation on Remand

Remand for further development of the evidence is warranted. *Hallett v. Astrue*, 2012 WL 4371241, at *7 (D. Conn. Sept. 24, 2012) ("Where the ALJ fails to fulfill the duty to develop the record, the reviewing district court should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial of benefits for further development of the evidence."); *see also Jermyn v. Colvin*, 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("On remand, the ALJ is directed to develop the record as it relates to Plaintiff's physical impairment by obtaining RFC assessments from medical sources, including Plaintiff's treating physicians.").

The ALJ's assessment of Mr. Newton's residual functional capacity was made in the absence of medical opinions by treating physicians, and in the absence of *any* information about Mr. Newton's limitations during a significant portion of the relevant time period. Moreover, it was not otherwise supported by substantial evidence. As such, the ALJ shall develop the record by requesting a medical source statement or other assessment of functional limitations from a treating or consulting physician, and shall then reevaluate the RFC determination. Because such

a reevaluation may impact the application of the Medical-Vocational Guidelines and the types of jobs available to Mr. Newton, I do not reach Mr. Newton's additional claims of error.

## III. Conclusion

For the reasons set forth above, Mr. Newton's motion, ECF No. 16, is GRANTED and the Commissioner's motion, ECF No. 17, is DENIED. The case is hereby REMANDED.

                                      IT IS SO ORDERED.

                                      /s/
                                      Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
                September 26, 2019